OPINION OF THE COURT
Raymond E. Cornelius, J.
Under what circumstances may a court exercise its authority, pursuant to Election Law § 16-108, and order the registration of prospective voters who have not complied with the time limits for central or local registration, or registration by mail, all as contained in Election Law §§ 5-200, 5-202 and 5-210? Based upon reasons hereinafter set forth, the court’s discretion, in this regard, should not extend beyond directing the registration of prospective voters, who have otherwise properly registered pursuant to these statutory provisions of the Election Law, unless there is some evidence that the Board of Elections has not fulfilled its responsibilities.
Pursuant to an order, dated June 22, 1987, this court was assigned to preside over matters on Election Day, for the County of Monroe, in the Seventh Judicial District. (See, *455 Election Law § 16-108 [6].) Each year, on or close to Election Day, the State courts receive numerous applications for court orders, directing the registration, and/or permission to vote, of individuals who have changed residency within the year since the last general election. Many of these petitions relate to a voter’s failure, or inability, to reregister after a residency change. The above application, which was presented to this court on Election Day, was somewhat unique because it involved a request by the petitioner that she be allowed to serve as an election inspector. Nevertheless, Election Law § 3-400 (6) requires that an election inspector be a registered voter, and the issue, as framed[1] at the outset of this decision, was presented.
The petitioner personally appeared with counsel, and the court directed that she be placed under oath and her testimony recorded. (See, e.g., Palla v Suffolk County Bd. of Elections, 38 AD2d 84 [2d Dept 1971], affd 31 NY2d 36 [1972].) Initially, petitioner represented that she had registered to vote at the main office of the Board of Elections on that very day. Generally, central registration would be possible only during the period which "does not lie within thirty days immediately before the first day of local registration and thirty days immediately after the general election”.[1] (Election Law § 5-200 [1].) In this case, one of the Commissioners of Election was contacted by the court, and it was learned that petitioner’s application for registration had been submitted on Election Day, but, of course, could not be processed until after the requisite time period.
Additional inquiry of the petitioner disclosed that earlier in the day she had been one of several other individuals, who had appeared by different counsel and submitted petitions for a court order to compel registration by the Board of Elections, and, further, that her particular petition had been denied. In relevant part, the petitioner, at the time of her appearance before the court, testified that she had been registered to vote at her previous residence, but had moved in "late August” or "sometime last fall”. Presumably, she had not taken advantage of Election Law § 5-208, which permits a voter, who changes residence after the last day of local registration, to transfer their registration by mail and vote at the next general election if postmarked and received at least 30 days *456 prior thereto. Furthermore, the court concluded that, at some point, petitioner’s registration had been canceled because of the change of residence and failure to transfer her registration. (See, Election Law § 5-400 [2].)
Pursuant to express provisions of Election Law § 16-108 (1) a court "shall compel, by order” the registration of a voter, in a proceeding instituted by a voter, "to whom registration has been unlawfully refused”. (Emphasis added.) Furthermore, the Board of Elections is a necessary party and must receive such notice as the court may direct. (Election Law § 16-108 [2].) As a general rule, the refusal to register a voter who has not timely submitted an application, pursuant to the statutory provisions, could not be regarded as unlawful. It should be emphasized that the Election Law provides a citizen with several alternatives for registration which, hopefully, will facilitate the exercise of the right to vote. For example, a prospective voter may register at a place established for local registration, one day of which must occur on a Saturday between the sixth Saturday and fourth Saturday before each general election.[2] (Election Law § 5-202.) As already mentioned, central registration is available most of the year and, in addition, a "person who has moved within the county or city of his residence after the last day for local registration * * * may register before a board of central registration” up to 10 days before a general election at which he wishes to exercise the right to vote.[3] (Election Law § 5-200 [2].) Registration by mail is perhaps the easiest means to register, but requires that the application be postmarked at least 30 days, and received at least 25 days, before the election. (Election Law § 5-210.)
Certainly, a court would be empowered to grant an order, pursuant to Election Law § 16-108, in a case where the election records, for clerical or other reasons, fail to reflect the registration of a voter, who has timely registered in accordance with the above statutory provisions. In addition, the failure of the Board of Elections to fulfill its responsibilities, which adversely affects the timely registration of a prospective voter, may provide sufficient grounds. Thus, for instance, the failure to provide adequate local registration facilities to voters, who made diligent efforts to register locally, notwith *457 standing availability of alternative forms of registration, has been held to constitute sufficient grounds to issue such an order. (Matter of Eisner v Boothroyd, 54 AD2d 989 [3d Dept 1976].) By analogy, a petitioner might arguably contend that misinformation provided by a Board of Elections, which results in a late registration, would be sufficient reason for a court to conclude that a refusal to accept the registration was unlawful. Similarly, the failure to give the proper notices, in regard to cancellation of registrations, as required by Election Law § 5-402, may be a valid reason to permit a late registration. Indeed, in People ex rel. Hirsh v Wood (148 NY 142, 146-147 [1895]) the court made the following observation: "We can conceive of no principle which permits the disfranchisement of innocent voters for the mistake or even the willful misconduct of election officers in performing the duty cast upon them”.
It should be recognized that there are certain unique situations in which a strict application of the Election Law would result in a hardship. One example might be a registered voter who has changed residency within 10 days of a general election and, therefore, unlike someone who has moved prior thereto, unable to avail himself of central registration. Another illustration might be an individual who is unavailable to register because of serious illness or some other equally valid reason.
The Election Law also provides for court orders permitting a person to vote, in addition to, and to be distinguished from, orders compelling, in effect, late registration. Election Law § 16-108 (3) provides for such an order and, also, if necessary, an order directing "the board of elections to complete the voter’s registration and enrollment records.” Although this subdivision does not include a requirement that the Board of Elections be made a necessary party, or for notice, the order may only be granted "in a proceeding instituted by any voter unlawfully denied the right to vote”. (Emphasis added.) Nevertheless, several other statutory provisions make reference to court orders, which will permit an individual to vote, without any qualifying language, or basis, upon which such orders may be granted. (See, Election Law §§ 5-100, 8-302.) All of the aforementioned sections were cited in one decision, in which a court permitted a citizen, who had become naturalized after the last day for local registration, to vote by court order. (Matter of Haub v Inspectors of Election, 126 Misc 2d 458 [1984].) This would be somewhat analogous to the hardship *458 imposed upon a registered voter who changes residence subsequent to 10 days before a general election.
Although the above discussion involves instances where a court may be justified in granting court orders, such authority should not be absolute, regardless of whether the decision involves an application for an order compelling a prospective voter’s registration, or an order permitting someone to vote. Unless some standard is established, courts would possess unlimited discretion to grant orders. Specifically, in regard to the registration of individuals who have failed to comply with the statutory time limits, such a result would tend to defeat the concept of registration, which was designed, in part, at least, to prevent fraud. Although the above-cited examples of possible valid grounds for the issuance of court orders would, in effect, permit late registration, the reasons thereof all relate to the failure of a Board of Elections to fulfill its responsibilities, whether through omission or affirmative acts. Thus, a refusal to accept a late registration, under these circumstances, could be considered as unlawful, which is the only basis for issuance of such an order under Election Law § 16-108 (1) and (2). In this proceeding, the petitioner was unable to establish any such basis, and both of her applications were denied.

. The first day of local registration, prior to the election, occurred on Tuesday, October 6,1987.

. The last day of local registration, prior to the election, occurred on Saturday, October 10, 1987.

. Election Day occurred on Tuesday, November 3,1987.